**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) <br> ) <br> **Plaintiff,** ) <br> ) <br> v. ) <br> ) <br> ) <br> **WALTER COLEMAN,** ) <br> ) <br> **Defendant.** ) <br> _____) | **CRIMINAL ACTION** <br><br> **No. 06-20152-01-CM** |

## MEMORANDUM AND ORDER

This case is before the court on defendant's Motion to Suppress Evidence and Statements (Doc. 19). The court held a hearing on the motion, where the parties submitted evidence and presented argument. The parties also submitted briefs on the motion. The court now makes factual findings based on the hearing and incorporates those findings within the following analysis.

Defendant contends that Joyce Winfield, defendant's mother, did not voluntarily consent to the search of her and her son's home. The court will admit evidence obtained by a consent-based warrantless search only if the government "(1) produces clear and positive testimony that the consent was unequivocal, specific, and freely given, and (2) proves that the consent was given without duress or coercion, express or implied." *United States v. Glover*, 104 F.3d 1570, 1584 (10th Cir. 1997) (citation omitted). The consent must be "the product of a rational intellect and a free will" and be made with a "mental awareness so that the act of consent was that of one who knew what he was doing." *United States v. Gay*, 774 F.2d 368, 377 (10th Cir. 1985). "This requires both understanding and judgment." *United States v. Sims*, 428 F.3d 945, 953 (10th Cir. 2005). The court looks to the totality of the circumstances in making this determination. *Schneckloth v. Bustamonte*,

412 U.S. 218, 227 (1973).  Some of the factors the court considers in determining whether consent was voluntary include the consenting party's education and intelligence, as well as her mental and physical condition at the time.  *Id.* at 226.  The court also considers any threats or promises and the length and nature of the encounter.  *United States v. McCurdy*, 40 F.3d 1111, 1119 (10th Cir. 1994); *Bustamonte*, 412 U.S. at 226.

In this case, Ms. Winfield signed a written consent to search her home, where the officers found the weapon that is the subject of the charges against defendant.  The key issue is whether Ms. Winfield's level of intelligence and mental condition rendered her incapable of voluntarily consenting.

The court had the opportunity to observe Ms. Winfield on the witness stand.  She became confused several times and spoke slowly and haltingly, on an elementary level.  Her facial expressions, mannerisms, and approach to and exit from the witness stand also indicated to the court that she was not functioning with an average mental capacity.  The court finds that Ms. Winfield's appearance in court was an accurate representation of her mental capacity, and that she was not acting in order to appear less mentally capable than she is.

Dennis Wylie, a long-time friend of Ms. Winfield, testified that Ms. Winfield is on social security for a learning disability and that she cannot read or understand what she reads.  He also testified that she often indicates that she understands something when she does not.  The court finds the testimony of Mr. Wylie credible.  Furthermore, Ms. Winfield testified that she orally told the officers that they could not search her house, which is inconsistent with the document that she signed.  This inconsistency, combined with the other evidence of her literacy level, supports a conclusion that she did not understand the document.  She also tried to retrieve the gun for the

officers herself, further indicating that she did not understand what she authorized.

The evidence was unclear how much of her own finances Ms. Winfield handles, although she has no legal guardian. The court notes that she cares for her mentally-handicapped daughter, but this fact does not indicate to the court that Ms. Winfield was capable of voluntarily consenting by signing a document. Nor does the telephone conversation between defendant and Ms. Winfield convince the court that Ms. Winfield was functioning at a higher level than she portrayed in the courtroom. The government argues that Ms. Winfield was articulate on the phone and discussed "banking matters" with defendant. The court's perception of the phone call differs from the government's. Although defendant talked with Ms. Winfield about his pin number, he also repeated his instructions at the end of the conversation to make sure that she remembered to do what he wanted her to do. Finally, the fact that Ms. Winfield told defendant that she wrote him a letter does not indicate to the court that her literacy level is higher than other evidence suggests. While the content of the letter may have been telling on this point, the letter itself was not entered into evidence. The court cannot assume from the fact that Ms. Winfield wrote a letter that her words were sophisticated or the thoughts expressed were complicated.

The court also heard testimony from Dr. John H. Wisner, who testified that Ms. Winfield's I.Q. is 64 and that her retardation is stable and permanent. She cannot use or understand abstract concepts such as "rights" or "consent." Dr. Wisner testified that Ms. Winfield is influenced by the demands of others, the appearance of authority, and superior physical strength. He concluded that she lacks any meaningful capacity to comprehend—much less waive—"rights," and that a consent form would have no significance based on her inability to understand and her submission to others. Further supporting Dr. Wisner's analysis is Ms. Winfield's own testimony that she does not know what the Constitution is or what a right is. The court finds that Dr. Wisner's testimony was credible

and reliable. His testimony, coupled with the court's own observations of Ms. Winfield in the courtroom, weighs heavily in favor of finding that Ms. Winfield was incapable of voluntarily consenting to the search of her home.

The totality of the evidence indicates to the court that Ms. Winfield's consent was not voluntary based on her level of intelligence and mental condition. The fact that the officers did not threaten her, act coercively, or intentionally place her under duress does not outweigh Ms. Winfield's diminished capacity. In fact, the court finds nothing improper with the manner in which the officers treated Ms. Winfield. But the Tenth Circuit has not adopted a police perspective test in consent-to-search cases. *Sims*, 428 F.3d at 953 n.2. The Tenth Circuit still considers the totality of the circumstances. *Id*. The court therefore considers the officers' treatment of Ms. Winfield in conjunction with the other evidence of record. Regardless of how courteous the officers were to Ms. Winfield, the fact remains that she is inordinately influenced by the appearance of authority. She testified that she thought they were going to arrest her because they told her that she had an outstanding warrant.

The court does not take the suppression of the evidence in this case lightly, particularly because the court does not fault the officers for their conduct. But based on the evidence as a whole, the court is not persuaded that Ms. Winfield knew what she was doing. The government did not meet its burden of showing that Ms. Winfield's consent was "the product of a rational intellect and a free will" and made with a "mental awareness so that the act of consent was that of one who knew what he was doing." *Gay*, 774 F.2d at 377.

The government argues that even if Ms. Winfield's consent was invalid, the court should not suppress the evidence based on the doctrine of inevitable discovery. The government submits that the officers had probable cause to obtain a search warrant. But the inevitable discovery is

inapplicable where the government's sole argument is that it had probable cause. *See United States v. Souza*, 223 F.3d 1197, 1203 (10th Cir. 2000). "'[W]hat makes a discovery 'inevitable' is not probable cause alone . . . but probable cause plus a chain of events that would have led to a warrant (or another justification) independent of the search.'" *Id.* (quoting *United States v. Brown*, 64 F.3d 1083, 1085 (7th Cir. 1995)). Here, the government did not produce evidence that the officers took any steps to obtain a search warrant, making the inevitable discovery doctrine inapplicable.

For all of the reasons stated above, the court finds that Ms. Winfield's consent to search the house was invalid and that the evidence obtained from the search—the shotgun—should be suppressed. Suppression of the shotgun necessarily means that defendant's confession also must be suppressed.

**IT IS THEREFORE ORDERED** that the Motion to Suppress Evidence and Statements (Doc. 19) is granted.

Dated this 25th day of October 2007, at Kansas City, Kansas.

> s/ Carlos Murguia
> **CARLOS MURGUIA**
> **United States District Judge**